THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
FRANCISCO JOSÉ LAFONTAINE ÁLVAREZ, Defendant and
Appellant.

No. CR-67-216.      Decided November 20, 1969.

*Santos P. Amadeo* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The prosecuting attorney filed three informations against appellant José Lafontaine Álvarez charging violations of § 65 of Act No. 6 of June 30, 1936, as amended, known as the "Spirits and Alcoholic Beverages Act", 13 L.P.R.A. § 1742, said violations consisting in having sold alcoholic beverages at the business "Bar la Vida en Broma", on August 10, 15, and 19, 1966, without defendant having a license issued by the Secretary of the Treasury for the sale of those beverages. The prosecuting attorney also filed another information against appellant for a violation to the Bolita Act, 33 L.P.R.A. § 1250, consisting in having in his possession and control material connected with the games of bolita and/or bolipool.

The cases having been heard on May 8 and 9, 1967, the Superior Court, San Juan Part, found defendant guilty of the four offenses and punished him to pay a $100 fine or a day in jail for each dollar which he did not pay in each of the violations of the Spirits and Alcoholic Beverages Act, and six months in jail for violation of the Bolita Act.

Appellant maintains that (1) the sentence for violating the Bolita Act is void because the evidence seized was the result of an illegal arrest and search, and because § 4 of said Act is unconstitutional, and (2) the sentences for violating the Spirits and Alcoholic Beverages Act are void because

defendant, not being the owner of the establishment "La Vida en Broma", was not bound to have any license to sell liquors.

In accordance with the evidence for the prosecution, during the nighttime of August 10 and 15, 1966 the State Police undercover agent, Jorge Martínez García, went to the *cafetín* "La Vida en Broma", situated at Jefferson Street, corner of Molina Street in the area of Loíza Street, and requested the defendant, who was in charge of the business then, two beers for which he paid. On both occasions the agent drank a beer and took the others with him as evidence to the Vice Control Division. On the two occasions the agent saw only defendant taking care of the business and waiting on the people. This agent did not know who was the owner of that business. On August 19 of the same year 1966, at nighttime the agent Basilio Rivera, together with another agent called Santiago Llanos, arrived at said business. There were five or six persons at the business drinking alcoholic beverages. He bought from appellant three beers of which he drank two and took the other with him as evidence. When the rest of the personnel for whom they were waiting arrived agent Llanos identified himself and they proceeded to request the license to engage in the sale of alcoholic beverages from defendant. Defendant stated that he did not have any license. The agents then proceeded to arrest him and seized "the evidence that he had in the business" consisting of some four bottles of liquor of different kinds and some twelve cases of beer. When they arrested defendant, agent Llanos searched him and seized from a brown wallet which he had in the right rear pocket of his pants, a list with three figure numbers followed by a dash and amounts at the right side.

When the agents arrested defendant, the latter sent for a lady, Josefina Calderón, who came to the establishment and told the agents that she was the owner of said business and that the same had a license. At the request of the agents she could not show the license for the sale of alcoholic beverages.

She was taken together with defendant before Judge Mélendez Agosto, "who proceeded to accuse her of violating the Spirits and Alcoholic Beverages Act also."

From the evidence for the defense it appears that defendant worked in the business "La Vida en Broma" as an employee, although not permanently because its owner suffered from phlebitis, she could not be on her feet for a long time, but she always went to the business around 4:00 o'clock in the afternoon. Defendant did not know that the business did not have a license to sell alcoholic beverages. When defendant worked the owner of the business paid him $25 weekly.

Mrs. Josefina Calderón was the owner and manager of the business. She was accused as owner of the business of the same facts charged against appellant, selling alcoholic beverages without having the corresponding license and she paid the fine imposed.

The "Spirits and Alcoholic Beverages Act" imposes upon the dealers in alcoholic beverages the obligation of obtaining a license from the Secretary of the Treasury and to pay therefor the fees that said Act specifies.[1] Insofar as pertinent it provides:

"§ 1534. Dealers

"Each year every person engaged in any of the occupations or businesses relating to the purchase or sale of the taxable products mentioned in this subtitle *shall obtain a license* from the Secretary of the Treasury for each *business, place or commercial establishment,* and shall pay for each license the fees hereinbelow specified: . . ." (italics ours).

The terms "Dealer" and "Retailer" (Retail Dealer) are defined in the Act, 13 L.P.R.A. § 1474 (2) and, (4) in the following manner:

"(2) 'Dealer': Every person who, by himself or through his agents, servants or employees, sells, exchanges, changes, offers

---

[1] 13 L.P.R.A. § 1534.

for sale, exposes for sale, or has for sale in his commercial establishment or elsewhere, whether used also for a dwelling or for any other purpose, any article taxable under this subtitle. All products subject to taxation under this subtitle which are exposed to the public in a commercial establishment, shall be considered as being there for the purpose of being sold. Manufacturers, distillers, and rectifiers who sell or dispose of their products in their respective factories, shall not be considered as dealers."

"(4) 'Retailer (Retail dealer)': All merchants, agents, commission merchants, and other persons who sell to others who are not merchants or dealers, in quantities that are generally sold for individual use and consumption, any product which is taxable hereunder."

Finally, and insofar as pertinent to this appeal, the Act imposes penalty for failure to obtain a license.

"§ 1742. Penalty for failure to obtain license

"Every person undertaking or continuing any industry, business or occupation subject to license or permit under the provisions of this subtitle, without obtaining or renewing the corresponding license, or without paying the fees, or installments thereof, in the form and at the time prescribed by this subtitle, or whose license may have been revoked, shall be guilty of a misdemeanor, and the plant, machinery, implements, instruments, receptacles, taxable products, and all other property found in the establishment of the delinquent person and utilized in his industry, business or occupation, or in transporting the products taxable under this subtitle, may be attached by the Secretary of the Treasury or by his agents, and by him sold at public auction to indemnify the Commonwealth of Puerto Rico."

■ In accordance with the legal provisions already cited, although the license for the sale of alcoholic beverages is issued by the Secretary of the Treasury in the name of one person,[2] the same is valid and may be used only in the

---

[2] "Person": every natural or artificial person, including under the latter term partnerships, firms, associations, and corporations, by whatever name known. 13 L.P.R.A. § 1474(1).

specified business, place or commercial establishment for which it was issued.[3]

██ It is a true fact that the commercial establishment "La Vida en Broma" did not belong to appellant. The owner was Mrs. Josefina Calderón and the legal obligation to obtain the corresponding license for that business or commercial establishment fell upon her. Appellant was a mere employee of that business. Mrs. Calderón, as we have said before, was accused of the same facts charged against appellant and she paid the fine imposed. Appellant was not bound to obtain said license. The owner of the establishment incurred liability even though she did not make the sales personally. It is sufficient that she made them through her employees, agents, or servants. 13 L.P.R.A. already cited.

██ Even though appellant would have been prosecuted for aiding the owner of the business to violate the law, 13 L.P.R.A. § 1762, the evidence would not justify the determination that appellant in acting thus did it knowingly. The sentences for the violations of the Spirits and Alcoholic Beverages Act should be reversed.

Appellant maintains that the sentence entered for violation of § 4 of the Bolita Act (Act No. 220 of 1948) is void because the bolita material which was found in his pockets by the Police was the result of an illegal arrest and search.

There is no doubt that a peace officer may carry out an arrest without the corresponding warrant when he has reasonable grounds to believe that the person about to be arrested has committed an offense in his presence. Rule 11 of the Rules of Criminal Procedure.

---

[3] The Secretary of the Treasury may refuse to issue licenses to certain commercial establishments for the retail of alcoholic beverages. 13 L.P.R.A. § 1703.

■ The rule does not demand that an offense should have been committed, it suffices that the officer has reasonable grounds to believe that an offense has been committed in his presence. *People* v. *Cabrera Cepeda*, 92 P.R.R. 68 (1965); *People* v. *López Rivera*, 89 P.R.R. 774 (1964). In order to determine whether the officer had reasonable grounds to believe that an offense has been committed in his presence, the conduct of the officer or agent is to be judged on the basis of the weight given by a reasonable and prudent person to the attendant circumstances. *People* v. *Cabrera Cepeda*, *supra; Cepero Rivera* v. *Superior Court*, 93 P.R.R. 241 (1966).

■ In the instant case the agents went on three different dates to the business "La Vida en Broma" and on those three occasions the only person taking care of the business and selling alcoholic beverages was appellant. When he was requested the corresponding license he said that he did not have it. Under these circumstances the agents had reasonable grounds to believe that defendant was committing an offense in their presence and his arrest was legal. However, the fact that the arrest was legal does not render ipso facto defendant's search reasonable.

■ The evidence does not establish circumstances to justify the search of the person of the appellant. The offense apparently committed in the presence of the agents consisted in that the commercial establishment where appellant sold alcoholic beverages did not have the license which for that purpose the Secretary of the Treasury should issue. The evidence seized by the agents consisting of bottles of liquor and cases of beer was exposed to the public. There was no resistance, on defendant's part, to his arrest nor to the seizure of the evidence, nor was there any intent on his part to assault the agents. Under these circumstances the search of his person was unreasonable and therefore, the bolita

material seized upon him was inadmissible in evidence. *People* v. *Polanco Marcial*, 95 P.R.R. 457 (1967). Consequently, the judgment for violation of the Bolita Act should be reversed.

In view of the conclusion which we have reached it is unnecessary to consider the contention about the unconstitutionality of § 4 of the Bolita Act, insofar as it provides that the trials for its violation shall be heard by the court without a jury. See, however, *People* v. *Colón Rivera*, 90 P.R.R. 178 (1964); *People* v. *Pérez*, 83 P.R.R. 221 (1961); and *People* v. *Rivera Alvira*, 97 P.R.R. 86 (1969).

Judgment will be rendered accordingly.

Mr. Chief Justice Negrón Fernández did not participate herein.